**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ROBERTO CLASS-SOTO | * |
| Plaintiff | * |
| v. | *   Civil No. 08-1802 (SEC) |
| COMMISSIONER OF SOCIAL SECURITY | * |
| Defendant | * |

**OPINION AND ORDER**

This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act." Plaintiff Roberto Class-Soto ("Plaintiff") seeks review of the Commissioner of Social Security's ("the Commissioner") denial of social security benefits. Docket # 1. The Commissioner filed its answer and Memorandum of Law in support of the decision to deny benefits. Docket # 10 & 15. Plaintiff also filed his Memorandum of Law. Docket # 12. After reviewing the parties' filings and the applicable law, the Commissioner's decision to deny Plaintiff disability benefits will be **REVERSED**, and this case will be **REMANDED** for further proceedings consistent with this opinion.

**Standard of Review**

The scope of any judicial review of a Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)), the United States Supreme Court defined substantial evidence as "more than a mere scintilla[; it] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Furthermore, written reports submitted by non-

**Civil No. 08-1802 (SEC)**                                                                                                2

examining physicians who merely reviewed the written medical evidence are not substantial evidence; however, these may serve as supplementary evidence for the Administrative Law Judge ("ALJ") to consider in conjunction with the examining physician's reports. Irrizary v. Commissioner of Social Security, 253 F. Supp. 2d 216, 218 (D.P.R. 2003). Lastly, "it is the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12(1st Cir. 1982).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423 (d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir. 1982).

The five-step inquiry made by the ALJ in determining whether a claimant is disabled is the following. First, the ALJ asks: is the claimant currently employed? If so, he is not disabled; if he is not, then the ALJ must turn to the second question: does the claimant have a severe impairment (one which significantly limits his ability to perform work-related functions)? If not, then he is not disabled; if so, the ALJ must ask: does the claimant have an impairment equivalent to those contained in the regulations' Appendix I? If so, then he is

**Civil No. 08-1802 (SEC)**                                                                 3

automatically rendered disabled. If not, then the ALJ must determine if the claimant's impairment prevents him from performing work that he has done in the past. If the ALJ determines that the claimant cannot perform his past work, then he must determine if the claimant's impairment will prevent him from performing other work of the sort found in the national economy. If the claimant cannot perform any such work, he is disabled. If he is capable of performing work available in the economy, then he is not disabled under the Social Security standards. See Goodermore, 690 F. 2d at 6-7.

As stated above, the burden is on the claimant to establish that he is disabled, and unable to return to his past work. Id. at 7. However, if claimant meets this burden, then it is the Secretary's burden to show that there are other jobs in the national economy that the claimant can perform, notwithstanding his disability. Id.; see also Torres v. Secretary of H. H. S., 677 F. 2d 167, 168 (1st Cir. 1982); González-Alemán v. Secretary of H.H.S., 86 F. 3d 1146 (1st Cir. 1996). In satisfying this burden, the Secretary may rely on a set of rules, referred to as Grids, which are basically a matrix "combining different permutations of the four essential factors set out in the statute (age, education, work experience, and residual work capacity) and stating, as to each combination, whether a claimant with those characteristics is disabled or not disabled." Vázquez v. Secretary of H.H.S., 683 F. 2d 1, 2 (1st Cir. 1982).

Where a claimant has only strength limitations, that is, exertional limitations, the ALJ may rely on the Grids to meet the burden of determining that there are jobs available for the claimant in the national economy which he can perform. González-Alemán, 86 F. 3d at * 2. However, if the claimant has non-exertional impairments, the Grid may not accurately reflect the availability of suitable jobs. Id. That is, considering that the Grid is based on a claimant's exertional capacities, "it can only be applied when a claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." Rivera-Rivera v. Barnhart, 330 F. Supp. 2d 35 (D.P.R. 2004)(citing Frustaglia v. Secretary of H.H.S., 829 F. 2d 192 (1st Cir. 1987). Therefore, in cases "where a nonexertional impairment

**Civil No. 08-1802 (SEC)** 4

significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert." Miranda-Monserrate v. Barnhart, 520 F.Supp.2d 318 (D.P.R. 2007)(internal citations omitted). However, "should a non-exertional restriction be found to impose no significant limitation on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate." Rivera-Rivera, 330 F. Supp. 2d at 37-38.

In considering whether a claimant's residual work capacity is reduced by non-exertional limitations (*i.e.* a mental impairment), the Secretary must assess the claimant's mental capability for unskilled work, and his ability to cope with the demands of any work environment. See Irlanda v. Secretary of H.H.S., 955 F. 2d 765, 769-770 (1st Cir. 1991). The first inquiry focuses on whether a claimant is able to understand, remember, and carry out simple instructions, respond appropriately to the normal work environment and to deal with the changes in a routine work situation. Id. The second inquiry requires determining whether a claimant can be punctual, attend work on a regular basis, accept supervision, and remain in the work place for an entire day. Id. at 770.

Finally, an ALJ is a lay fact finder that lacks the expertise to make a medical conclusion, and, as such, "he cannot interpret raw, technical medical data." Irrizary, 253 F. Supp. 2d at 219 (citing Rivera-Torres v. Secretary of H. H. S., 837 F. 2d 4, 7 (1st Cir. 1988); Berríos v. Secretary of H. H. S., 796 F. 2d 574, 576 (1st Cir. 1986).

**Factual and Procedural Background**

Plaintiff was born on October 28, 1957, and holds a G.E.D. His most recent job before applying for benefits was as a maintenance employee at a hotel (T.R. at 82), a position he held between June 8, 2002 and July 15, 2003, when he was laid off. Before holding the hotel position, Plaintiff worked between March 23, 1980 and May 28, 1998 as an electronics inspector, and between February 14, 2000 and December 20, 2000 as a machine operator in an electronics business. T.R. at 90 & 26.  Plaintiff first requested disability and disability

**Civil No. 08-1802 (SEC)**                                                                                       5

insurance benefits on April 22, 2004, alleging that his disability had begun on July 15, 2003.[1] The claim was denied, along with the request for reconsideration. Accordingly, Plaintiff requested a hearing on August 26, 2004, and said hearing was held on January 25, 2007. Anderson Serrano represented Plaintiff during his application, and continues to do so in this appeal.

After the hearing the Administrative Law Judge ("ALJ") issued his decision on June 8, 2007, which held that Plaintive had sever impairments due to coronary artery disease and affective disorders. T.R. at 18. Nevertheless, he found that these impairments did not qualify as disabilities under the applicable sections of the CFR. This was due to the findings regarding Plaintiff's physical residual functional capacity, which the ALJ found to be as follows:

> . . . the claimant had the physical residual functional capacity to lift and carry 24 pounds frequently and 50 pounds occasionally. He was able to stand and/or walk and sit for about 6 hours each in an 8-hour workday. The claimant had no postural, manipulative, visual, communicative, or environmental limitations. From the mental standpoint, he was able to understand, remember, and carry out simple tasks; maintain attention and concentration level for more than two-hour period intervals; make judgments in simple work related situations; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting.

T.R. at 19. These conclusions led the ALJ to find that "[t]hrough the date last insured, [Plaintiff's] past relevant work as machine cutter II and electronics inspector did not require the performance of work-related activities precluded by [his] residual functional capacity." T.R. at 26. Therefore, he was found not under a disability as defined by the Social Security Act. Id. The Appeals Council approved the ALJ's decision, and denied Plaintiff's request for review on June 10, 2008. T.R. at 4-7.

Plaintiff then appealed to this Court (Docket # 1), arguing: 1) the Commissioner erred as a matter of law in evaluating the severity of [his] mental impairment and in failing to provide any reasons whatsoever for rejecting the option of his treating psychiatrist, 2) that

---

[1] He remained insured through December 31, 2006.

**Civil No. 08-1802 (SEC)**                                                                                           6

a finding of disability was warranted to due to Plaintiff's inability to perform sustained work activities, 3) the Commissioner erred in not making a determination of Plaintiff's past relevant jobs as a house keeper in a hotel. Docket # 12.

**Applicable Law and Analysis**

In reviewing the ALJ's decision, this Court is restricted to analyzing "whether the ALJ deployed the proper legal standards and found facts upon the proper *quantum* of evidence." Nguyen v. Chater, 172 F. 3d 31, 34 (1st Cir. 1999)(citations omitted). That is, "the ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Id..

*Residual Functional Capacity Determination*

On January 3, 2005 Plaintiff suffered from a heart attack ("infarction of the myocardial wall"), and was hospitalized for the same. T.R. at 206. Dr. Jose R. Martinez Barroso ("Martinez"), found that he suffered from "severe coronary artery disease . . ." and ". . . is totally and permanently disabled to engage in any duty." Id. Dr. Alan Rapoport ("Rapoport") evaluated Plaintiff for the Disability Determination Program, and found that he did suffer from serious CAD, that he had an uncertain prognosis, but that "[he was] able to sit, stand, walk, lift, carry, handle light objects, see, hear, speak and travel." T.R. at 223. The two physicians agreed in their general diagnosis, but they came to differing conclusions about Plaintiff's ability to function.

An ALJ has the discretion to resolve conflicts in the evidence, an ALJ may only discard medical opinions when they appear to be brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or are otherwise unsupported by the record. See Sánchez v. Commissioner of Social Security, 270 F. Supp. 2d 218, 221 (D.P.R. 2003). However, an ALJ's residual functional capacity determination will be found to be supported by the record if ". . . the consultative and non-examining physicians

**Civil No. 08-1802 (SEC)**                                                                                                              7

concluded that appellant suffered from mild limitations at most . . ." Ramos v. Barnhard, 119 Fed. Appx. 295, 297 (1st Cir. 2005). Here, the ALJ found that Rapoport's diagnosis, along with the results of the exercise test performed in June 2005 (T.R. at 245), and the State Agency's expert medical doctor's opinion, out weighed the conclusions of his treating physicians. Given that the ALJ based this analysis on the record, this Court is not in a position to second-guess his findings.  However, it must also assess the ALJ's decision as to Plaintiff's psychological conditions.

This Court notes that the State Agency's psychological examinations were carried out in 2004 by Jeanette Malondado ("Maldonado"), PsyD., various years before the final decision regarding disability. T.R.196-199. Furthermore, Maldonado's conclusions are accompanied by very a very short justification which does not fully explain her reasoning. T.R. at 198. On the other hand, Plaintiff's treating psychiatrist, Karen Soto Medina ("Soto"), has an extensive treatment record with Plaintiff. Said record demonstrates her continued observation of Plaintiff's psychological and psychiatric conditions over a number of years.  From that experience, she opined that he had severe limitations in social interactions, and his ability to carry out instructions. T.R. at 260-261.  In evaluating Soto's conclusions the ALJ failed to fully consider her conclusions, despite the fact that he did not identify that he did not explain why he found them to be conclusory, not supported by clinical diagnostic techniques, or otherwise unsupported by the record. See Sánchez, 270 F. Supp. 2d at 221. From the sparse observations provided by the State Agency's consulting psychologist, the ALJ was not in a position to so completely discount Soto's conclusions. Furthermore, his conclusions regarding hospitalization are unfounded. In the case at hand, Plaintiff has support at home from his wife, which might have lessened the need for hospitalization, or partial hospitalization.  Not all disabling psychological o psyciatric conditions must require hospitalization.

Of course, the ALJ has the discretion to resolve conflicts in the evidence, but in the

**Civil No. 08-1802 (SEC)** 8

case in hand there was no competing evidence to reliably undermine Soto's determinations. This does not that mean that the ALJ had to agree with her statements regarding disability, but rather that he should not have so rapidly disregarded the credibility of her diagnosis. Accordingly, this Court will remand the present case for further evaluation of Plaintiff's psychological and psychiatric conditions and their effect on his residual functional capacity.

### Conclusion

In light of the above, the ALJ's decision in this case is **REVERSED and REMANDED.** On remand, the ALJ must obtain an independent medical assessment of Plaintiff's conditions, and give due weight to Soto's conclusions.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2010.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge